## CARLISLE *vs.* RICH.

A voluntary conveyance, made without consideration, by an individual who is insolvent, is void against creditors existing at the time of the conveyance ; and is void against *subsequent* creditors, if executed with a previous fraudulent intent in reference to their claims.

Where an individual became surety to another on an administration bond— *Held,* that the execution of such bond by him created a present indebtedness to the obligee, so as to render a voluntary conveyance of his estate, without consideration, fraudulent and void, he being insolvent at the time ; and that the indebtedness for this purpose did not depend on condition broken, or rendition of judgment.

Where a case finds that the debtor is insolvent at the time judgment is rendered, and is unable to respond the amount recovered, his insolvency will be considered as extending back beyond a voluntary conveyance of his property made during his indebtedness, unless the contrary be shown.

THIS was a writ of entry, brought to recover a tract of

land in Northumberland, and was tried upon the general issue, and a verdict taken by consent for the demandant, subject to the opinion of the court upon the following case.

Thomas S. Tillotson, as principal, and Thomas Peverly, senior, and Benjamin Peverly, as sureties, on the 3d September, 1822, executed a bond to the judge of probate, in the sum of $25,000 for the due administration of the estate of John M. Tillotson. On the 1st of July, 1826, Thomas Peverly, senior, by deed conveyed to Thomas Peverly, junior, the farm on which he lived, and three other tracts of land. The consideration mentioned in the deed was $2,100. At the time of this conveyance, Peverly, senior, was about 70 years of age, in good circumstances, excepting as regarding this claim, and Peverly, junior, was his only child ; but Benjamin Peverly, the other surety in said bond, had become poor. Peverly, senior, and Peverly, junior, lived together upon the farm, and it was carried on by Peverly, senior ; afterwards as before until the 14th of January, 1829, when Peverly, junior, by deed conveyed the farm and other tracts of land to Moody Rich, the tenant.

Just before this conveyance was made, Thomas S. Tillotson, the principal in said bond, had absconded ; and on the said 14th of January, 1829, the creditors of the estate of John M. Tillotson made application to the judge of probate for a license to put said bond in suit. At the time the conveyance was made to Rich, the cattle, pork, grain, and other goods of Peverly, senior, were removed in the night, and placed in the hands of others, and Peverly, junior, removed to the house which Thomas S. Tillotson had occupied.

On the 17th of January, 1829, certain creditors of the estate of John M. Tillotson, having obtained from the judge of probate a license for the purpose, commenced a suit on the probate bond, and attached the farm aforesaid, as the property of Peverly, senior. Judgment was rendered in favor of the judge of probate at July term of the superior court, 1833, and on the 30th of December, in the same

year, execution issued in favor of this demandant, among other creditors, for $395,12.

On the 14th of January, 1834, the demandant caused his execution to be extended upon the demanded premises, being part of the farm above mentioned. The appraisers in the extent were Samuel A. Pearson, Adino N. Brackett, and Francis Wilson. Brackett was one of the creditors, in whose favor executions were awarded, in the suit on the probate bond. Pearson was also a creditor, and had an execution in the same suit, which was levied on the land conveyed by said deed of July 1, 1826, and was also the attorney who commenced the action : but it did not appear that he was the attorney of this demandant. The demandant having proved the facts above stated, rested his title to recover on those facts.

On the part of the tenant, it was insisted that the probate bond could not be considered as a debt of Peverly, senior, in 1826,—he being only a surety, and there not appearing to have been any breach of the condition at that time. But the court being of a different opinion, ruled that under the circumstances above stated it was incumbent upon the tenant, to entitle him to a verdict, to show that the conveyance from Peverly, senior, to Peverly, junior, was made on a consideration sufficient to sustain it against creditors, or that the tenant paid an adequate consideration for the conveyance to him.

It was also insisted that the extent under which the demandant claimed was void, Brackett and Pearson not having been legal appraisers. But the court overruled the objection, and thereupon the tenant submitted to a verdict against him, without offering any evidence.

*Bell,* for the defendant. I. There was no indebtedness by the elder Peverly at the time of the grant in July, 1826. The case shows that said Peverly became the surety of Tillotson on his administration bond in September, 1822,

and no action on the bond was commenced till January, 1829, in which action judgment was recovered December term, 1833 ; and it was contended that a deed of conveyance made by Peverly, who was a mere surety upon the bond, to his son, at any time previous to the rendition of judgment on the bond, could not be considered as fraudulent and void as to the judgment creditor. *Fales* vs. *Thompson,* 1 *Mass.* 134 ; *Prec. in Chan.* 377 ; *Rob. on Frauds* 460 ; *Newland on Con.* 384 to 388 ; *Walker* vs. *Burrows,* 1 *Atk.* 94 ; *ditto* 15 ; *Parker* vs. *Proctor,* 9 *Mass.* 390 ; *Bennett* vs. *Bedford Bank,* 11 *Mass.* 421 ; *Verplank* vs. *Sterry,* 12 *Johns.* 536 ; *Salmon* vs. *Bennett,* 1 *Con. Rep.* 525.

II. The deed was not void, because the grantor had other estate left sufficient to pay his debts. *Drinkwater* vs. *Drinkwater,* 4 *Mass.* 354 ; *Opinion of Judge Trowbridge,* 3 *Mass.* 573.

III. The grantee was not embarrassed in July, 1826, and had no fraudulent purpose in executing said conveyance. 8 *Wheaton,* 229 and 242 ; 15 *Johns.* 261 ; *Bennett and Bedford Bank,* and *Parker and Proctor, supra.*

IV. The defendant was a purchaser for a valuable consideration without notice, and therefore to be protected. *Jackson* vs. *Walsh,* 14 *Johns.* 407.

V. The appraisers were not indifferent between the parties.

*Smith,* for the plaintiff. I. The conveyance of July 1, 1826, from Thomas Peverly to Thomas Peverly, jun., was fraudulent as within the statute of 13 *Eliz.,* because said grantor was indebted at the time of said conveyance. *Roberts on Frauds,* 455, 459.

II. The conveyance was made by Peverly, senior, for the purpose of avoiding his obligations under the probate bond of September 3, 1822, and was thus fraudulent in fact as against those interested in said bond, whether said bond was executed before or after said conveyance. *Roberts, supra ;* 2 *Hoveden on Frauds* 75, 96, 97 ; *Kadogan* vs. *Kennett, Cowp.* 432.

UPHAM, J., delivered the opinion of the court.

By the statute of 3 *Hen.* 7, *ch.* 4, all deeds of gift *of goods and chattels*, in trust for the donor, were declared void; and by the statute of 13 *Eliz., ch.* 5, gifts of goods and chattels, *as well as of lands*, by writing or otherwise, made with intent to delay, hinder and defraud creditors, were rendered void as against the person to whom such fraud would be prejudicial.

The English decisions under these statues have been, both at law and equity, that voluntary conveyances, and even family settlements of lands or chattels, (which appear to be favored more than any other species of conveyance,) are fraudulent and void in law against existing creditors; and these decisions have been fully sustained by the American authorities. *Reade* vs. *Livingston,* 3 *Johns. Ch. R.* 481; *Sexton* vs. *Wheaton,* 8 *Wheat.* 229; *Hinde* vs. *Longworth, do.* 199; *Thompson* vs. *Dougherty,* 12 *Serg. & Rawle* 448; *Parker* vs. *Proctor,* 9 *Mass.* 390; *Bennett* vs. *Bedford Bank,* 11 *Mass.* 421; *Meserve* vs. *Dyer,* 4 *Green.* 52; *Jackson* vs. *Seward,* 5 *Cowen* 67.

The law is well settled on this point; but it is contended that at the time of the conveyance in this case, there were no individuals standing in the relation of creditors of said Peverly; and that the giving of a bond is not the creation of a debt which can bind the estate of the obligor until after the rendition of judgment for condition broken. But this doctrine cannot be admitted without much consideration. Its tendency would be extensively to sustain fraudulent conveyances made with a view to guard against future liabilities, and would go far to render unavailing all securities by bond, and to defeat the high objects such obligations are designed to effect.

The question is different from that presented by the relation betwixt one surety and another, or betwixt a surety and his principal. When an individual becomes a surety for another, it is holden that no right of action accrues be-

twixt the principal and surety until the surety has paid, or absolutely assumed, the debt as his own.    This principle seems to be necessary, to protect the debtor from suits commenced both by the surety and the creditor, and to prevent payment of the claim to the surety, while at the same time he would be holden liable to the creditor.   Suit, therefore, cannot be permitted by the surety till he has cancelled the creditor's claim.

But in cases of voluntary conveyance of property, after an individual had become surety, but before he had been damnified by default of his principal, we think courts would hesitate but little in considering the surety as having a subsisting claim at the time of the conveyance, and construing such conveyance as in fraud of the surety.    It has been accordingly holden in the very thoroughly considered case of *Howe & Ward*, 4 *Greenleaf* 195, that the relation of debtor and creditor among the sureties in a bond, so as to entitle one of them to impeach a voluntary conveyance made by another, commences at the time of executing the bond, and not at the time when one actually pays more than his proportion of the debt.    See also *Fox* vs. *Hills*, 1 *Conn.* 295; *Jackson* vs. *Myers*, 18 *Johns.* 425.

If this be so, the indebtedness to the obligee, which is directly fixed by the instrument, must be considered, by much stronger reasoning, as equally commencing from the time the instrument was executed.    The indebtedness is acknowledged as of that date.   It may indeed become subsequently of no force by virtue of full performance of the condition ; but if the condition is broken, the indebtedness should be considered as commencing from the date of the instrument, at least for the purpose of preventing either voluntary or fraudulent conveyances of the obligor to the injury of the obligee.

This conveyance then must be considered as void, being a mere voluntary transfer of property without consideration

while the grantor was under an existing liability which would bind the estate.

It was contended that the deed was not void, because the grantor had other estate left sufficient to pay his debts. But this does not appear. The case finds that when judgment was obtained, there were not sufficient funds to pay the claims recovered under the bond ; and until the contrary appears such will be presumed to have been the case at the time of the conveyance. No point of this kind was taken at the trial, and no testimony was submitted to the jury on the subject. The insolvency must therefore be considered as extending back to the time of the grant.

It is also denied that there was any fraud in fact. But it is sufficient that the conveyance is fraudulent in law, arising from the fact that the conveyance was without consideration, while at the same time the liability by bond is regarded as an existing claim. Whether there was fraud in fact would be a question for the consideration of a jury. If there was, it might be immaterial whether the debt subsisted *at the time of the conveyance, or not,* as a voluntary conveyance with fraudulent views would seem to be void, even as to *subsequent* creditors ; but not so, if there was no fraud in fact. *Reade* vs. *Livingston,* 3 *Johns. Ch. Rep.* 501 ; *Damon* vs. *Bryant,* 2 *Pick.* 411 ; *Howe* vs. *Ward,* 4 *Green.* 195 ; 2 *Kent's Com.* 2 *ed.* 442.

The tenant in this case shows no consideration for the conveyance to him ; and it is clear, from the facts in the case, uncontradicted by any testimony on the part of the tenant, that no consideration was paid by him.

The exception taken as to the appraisers by whom the demandant's levy was made is settled, in *Porter & al.* vs. *Bean,* 1 *N. H. R.* 363.

*Judgment for the demandant.*