## Samuel L. Pike *v.* Polly Pike.

It is matter of familiar practice in this State to permit subsequent attaching creditors, upon giving bonds for costs, to defend suits in the name of the defendants upon the record, upon the alleged ground that the claims embraced in the first suits are without foundation.

Where a suit was instituted by A. against B. upon notes alleged to be without consideration, and it appeared that if judgment should be obtained therein, the equity of redemption of lands belonging to C., which were held by voluntary conveyance, would be sold—*held*, that C. might appear and defend the suit, upon giving proper security for costs.

The leave to appear in such cases does not go to the extent to permit the party appearing to review the action; and if he brings a writ of review after payment of the costs and the withdrawal of his bond, the action of review will be dismissed.

Whether the court, after a verdict adverse to the party appearing, would, upon his motion and a tender of further security, stay execution and authorize him to bring a writ of review, *quære?*

Where C., upon filing a bond for costs, had leave to appear and defend a suit against B. in his name, and after an adverse verdict and judgment, and exe-

cution thereon, and the payment of costs and the withdrawal of the bond, he brought a writ of review—*held*, that it could not be sustained, and that a motion to dismiss the action should be granted.

ASSUMPSIT, on review. The original action was founded on two promissory notes of the said Polly, and an account filed by leave of court for work and labor done and performed by said Samuel. On the entry of the action at the February term, 1850, of the common pleas, Polly Pike was defaulted; and Ovid Chase, of Claremont, was permitted by the court to defend the suit, in the name of Polly, on his filing bonds for costs. This permission was granted upon its being shown to the court by Chase that certain lands were attached on the writ in the suit, which lands had been conveyed, subject to a mortgage deed from Polly to one William Rossiter, to Chase's wife, by voluntary conveyance, dated April 19, 1848, with condition that the said Polly should have the sole management, control and possession of the premises during her natural life, and should receive, enjoy and dispose of the rents, profits and income of the premises according to her pleasure and discretion, during her natural life; and upon his alleging that the notes were without consideration and fraudulent, and intended to defeat him of the benefit of the deed to his wife.

The action was heard and tried at the February term of the common pleas, 1851, and a verdict returned and judgment rendered in favor of Samuel for $391.10 debt, or damages, and costs taxed at $52.12. Chase paid the costs and withdrew his bond from the files of the court. An execution was duly issued by the court on said judgment, and the equity which Polly Pike had of redeeming the lands was duly sold by the sheriff, and the debt satisfied out of the proceeds thereof, and the surplus of the proceeds was paid by the sheriff to Polly on the fifth day of April, 1851.

The writ of review in this action was sued out by Chase without any license or permission of Polly Pike, and she disclaimed, and requested the suit to be dismissed, and Samuel L. Pike moved the common pleas to dismiss the action. Chase appeared and tendered his bonds, with sufficient sureties, running to each of

the parties on the record, for the security of such costs, if any, as either party may be adjudged to pay in this action of review, and claimed that he might be permitted to prosecute the action of review to the final termination thereof.

The questions arising upon the motion to dismiss the action were transferred to this court for determination.

*Edes*, with whom was *Metcalf*, for Samuel L. Pike, defendant in review.

At common law there is no review of actions, and, therefore, reviews depend wholly on the statute. Neither have courts of law, merely as such, any discretionary powers to grant reviews. Those powers are conferred by statute on the superior court in this State. Rev. Stat., chap. 192, § 2.

The writ in this case has been sued out by Chase as a matter of right, and unless he possesses that right the action must be dismissed. By being permitted to defend in the court below, he did not become a party to the suit. He did not thereby become liable to costs, except by the bond he filed for that purpose, and which, on the termination of the suit, he withdrew. *Little* v. *Bunce*, 7 N. H. Rep. 485.

All the power and right given him by the court terminated with the verdict of the jury and the judgment thereon; and suing out a writ of review is the commencement of a new process by statute, which could not of right be in Chase by his merely being permitted by the court to defend that suit.

We say that the court having no discretionary or equitable powers to grant reviews, if Chase had any equitable claims (which we deny) to review, he has mistaken his proper course, which should have been by petition to the superior court. This would be the most appropriate course, and the most just, for he would there be liable to costs, and would not subject the original defendant to costs without her consent, nor the defendant in review to costs which he might not be able to recover of the original defendant, on account of insolvency; for it will not be

Pike *v.* Pike.

pretended that Chase is liable to the costs of review, if he fails to sustain it.

Further still, if it is a matter of right for Chase to review, why tender his bonds to indemnify for costs? Parties in this State are not required to give bonds to commence and prosecute suits which of right belong to them. It is only when they are permitted by the court, through an exercise of equity powers or their judicial discretion, that such proceedings are had. The tender of these bonds could not enlarge the jurisdiction of the court of common pleas; and as we have above shown, that court has no equitable or discretionary powers in this case. That jurisdiction is in the superior court on petition.

We think the court below erred in permitting Chase to defend the original action, or that, if it did not, it must have been by the broadest discretion; for not being a party to the original action the judgment could not bar Chase's rights. In a suit for the recovery of his interest in the land, he might be permitted to show that the original plaintiff's claim was fraudulent as to him, notwithstanding the judgment. And after permitting Chase to defend, even, the judgment would not preclude Chase from again contesting the claim of the original plaintiff in a suit for the land. And should Mrs. Chase survive her husband, she also might contest the original plaintiff's claim on the ground of fraud. The original plaintiff would thus be subjected to a multiplicity of suits to defend his rights, and Chase would not be prejudiced by delay, for he had no right to the possession till the death of Polly Pike.

But we contend that if Chase has such an interest that the court below might in their discretion permit him to defend, that interest has now ceased. Even if Chase had filed his petition in this court for leave to review the action, the leave ought not to be granted, because his interest in defending the suit has ceased. And if in review the original defendant should recover judgment, it would not reverse the former judgment so as to affect the title of the purchaser at the sheriff's sale on the execution, and the title under it cannot be divested by any judgment

the court could give on a review. In *Little* v. *Bunce* the court say: "If goods are sold by virtue of an execution, and the judgment be afterwards reversed, the title of the purchaser is not affected by the reversal of the judgment." Now we say that the purchaser's title under the sale of the equity of redemption stands on the same ground as that of a purchaser of goods. It is a chattel interest, and the same reason will apply in the one case as in the other. Both are under the process of the court and their executive officer, the sheriff; and no person would bid much in either case, if he supposed he should lose his title to the thing purchased, on a reversal of the judgment. A sale in such a case differs from a levy of an execution on land; among other things, in this: That a levy puts the judgment creditor himself in possession of the land, while a sale of the equity of redemption puts the highest bidder, a stranger to the case and record, into possession of the title; and there could be no stability to a title thus acquired under sanction of the court, if it could be disturbed by subsequent proceedings in court, between other parties and in a suit in which the purchaser is not a party. In *Little* v. *Bunce,* above referred to, the court make a *quære* whether, where an execution is extended on lands, and the judgment is afterwards reversed, the first judgment may be reversed or annulled, as upon writ of error, or only that judgment may be rendered in favor of the plaintiff in review, to recover back the money erroneously recovered by the first judgment, leaving that judgment in force. This opinion was given under the law of 1830. Now the Revised Statutes settle the question, and judgment is given agreeably to the latter clause of the *quære*, that is, if the amount be reduced, the plaintiff in review shall recover judgment for the amount of such reduction. Rev. Stat., chap. 192, § 10.

Now we say that in this case, on a review, should the plaintiff in review succeed, and reduce the amount of damages recovered in the original action, he cannot reverse the former judgment, and the title acquired by the proceedings under that judgment cannot be disturbed. *Little* v. *Bunce,* 7 N. H. Rep. 485; *Eli*

Pike *v.* Pike.

v. *Froward*, 7 Mass. Rep. 25. His interest terminated with that suit. The principle is analogous to that of a subsequent attaching creditor who is permitted to come in and defend against the claim of the prior attaching creditor. After judgment and a levy by the prior attaching creditor upon the property attached, what benefit could it be for the subsequent attaching creditor to review? He would have no interest in the claim he had been permitted to defend between the original parties; and Chase has none in this case, and claims none, and if he should be permitted to prosecute a review, and should succeed in reducing the damages, he would not be entitled to them. They would not belong to him; and if he could prosecute a writ of review in this case, then might a subsequent attaching creditor do the same, even after the property had been applied to satisfy an execution issued on former attachments. Chase then has no interest to review in this case, as respects the title to the land, nor any interest in any reduction that might be obtained on review. Besides, his interest in the land is but contingent; dependent upon the survivorship of himself and wife beyond the life of Polly Pike; and if entitled to the reduction, it would be without consideration, and a review would not avail to benefit his title to the land.

Again, after judgment in the court below, there was no action pending in court for Chase to come in and defend. The suing out of a writ of review is the commencement of a *quasi* new action; and Chase having no interest in the claim of Samuel L. Pike against Polly Pike, and not being a party to the suit, cannot be permitted to commence such action. The interest that he claims of protecting his rights in the land, cannot entitle him to commence such action. We apprehend there is a difference in permitting third persons to defend suits pending in court, and in permitting them to prosecute suits between other parties that might affect remote and contingent interests.

As to the first point made by the counsel for the plaintiff in review, we say that the principle stated by him is only applicable where such persons are otherwise without remedy. *Webb* v. *Steele*, 13 N. H. Rep. 236. And so well is the counsel aware

of this fact, that in his second point he has said that in no other way could Chase protect his equitable interest. Now we think we have shown that Chase has no interest to protect by this review, and no equitable interest as between the parties.

As to his third point, we say it is answered by the case of *Little* v. *Bunce*. And as to his fourth, we contend that the law as to writs of review is not the same under the Revised Statutes as in 1830 and 1835. The former statutes expressly provided that the first judgment might be reversed, wholly, or in part, while the Revised Statutes have no such provisions, but expressly provide what judgment shall be given.

*Burke*, with whom was *Gates*, for Ovid Chase.

1. The first question raised by the facts stated in the case is, whether persons having equitable rights which can be enforced in courts of law only in the names of parties in whom the legal title is vested, can be permitted to prosecute or defend those rights in the names of the persons in whom the legal title exists. On this point the following authorities are cited as conclusive, viz : *Payne* v. *Rogers*, 1 Douglas Rep. 392 ; *Pattock* v. *Harris*, 3 Durnford & East 180 ; *Doe on the demise of Locke* v. *Franklin*, 7 Taunton's Rep. 9 ; *Buckman* v. *Buckman*, 4 N. H. Rep. 319 ; *Webster* v. *Harper*, 7 N. H. Rep. 594 ; *Webb* v. *Steele*, 13 N. H. Rep. 236 ; *Blaisdell & al.* v. *Ladd, & Page, Tr.*, 14 N. H. Rep. 129 ; *Eastman* v. *Wright*, 6 Pick. Rep. 322 ; *Jones* v. *Witter*, 13 Mass. Rep. 304 ; *Hackett* v. *Martin*, 8 Greenl. Rep. 77 ; *Matthews* v. *Houghton*, 1 Fairfield's Rep. 420 ; *Frear* v. *Everston*, 20 Johns. Rep. 142 ; *Browne* v. *Maine Bank*, 11 Mass. Rep. 157.

These authorities conclusively show that persons having equitable interests to protect, may prosecute or defend them in courts of justice in the name of the persons in whom the legal title exists ; and that in the pursuit or defence of those equitable rights, the persons possessing them will be protected by courts of law from all molestation or hindrance on the part of those in whom exists the legal title. In other words, the nominal parties

to the record shall not be permitted to interfere with or hinder the real parties in interest from the pursuit or defence of their equitable interests, provided the former are indemnified by the latter from all costs or damage which might otherwise result from the use of their names in the prosecution or defence of those equitable interests.

2. Having shown that those who have equitable interests to be protected in courts of law, may prosecute or defend them in the names of those in whom the legal title exists, or rather in the names of those who must technically be parties to the record, the next question which the case raises is, whether Ovid Chase, the person who defended the original action in the name of Polly Pike, and now sues out this writ of review, has such an interest in the subject matter of controversy as renders it necessary for him to defend the original action and to prosecute this review for the protection of his interests.

The answer to this question can be gathered only from the circumstances of the case. It appears by the facts stated that Polly Pike, nominal defendant in the original action, conveyed to her daughter, the wife of Ovid Chase, certain lands, reserving the use thereof to herself during her life, by her deed dated April 19th, 1848; that those lands were attached on the original writ in this action by the plaintiff, and that Chase contended that the debt on which the action was founded was fraudulent and therefore void. Hence he applied to the court for leave to defend the original action, and was permitted so to do. Judgment was rendered against him, and he now, in the name of Polly Pike, sues out this writ of review. The defendant in review contends that inasmuch as Chase is not a party to the record, the judgment recovered in the original action cannot conclude his rights; and that, consequently, if any person should claim the land by virtue of a sale or setting off upon the execution issued in the original action, he could resist that claim on the ground that the debt which was the foundation of the original action, and consequently the judgment, execution and subsequent proceedings, were fraudulent and void. But is the position of the

defendant in review correct? It is believed not. The convey-ance by Polly Pike to Chase's wife having been made in consid-eration of natural affection, and apparently subsequent to the creation of the debt which was the foundation of the original action, was fraudulent and void as respects Samuel L. Pike, if in fact his own debt was not fraudulent.

Thus it became necessary that Chase, in order to defend and protect the right of his wife, accruing under the conveyance of her mother, should defeat the claim of Samuel L. Pike, which he believes was a fraud, and which never had any honest origin, but was conjured up by Samuel L. Pike and his mother, Polly Pike, for the express purpose of defeating the rights of Chase's wife. If he were to permit the fraud to go unexposed, and to be sanctioned by that higher and more solemn form of indebted-ness, a judgment, in pursuing any claim in right of his wife for the land which had been set off and sold to satisfy that judgment, he could not defeat the rights of an innocent purchaser by showing that the judgment was founded on a fraudulent debt. He would be concluded by his own laches from disturbing the title and possession of an innocent person, who had become the owner of the estate under such circumstances.

It is therefore submitted that the only way in which Chase can defeat the debt claimed by the plaintiff of Polly Pike, and thus protect his wife's title to the land conveyed to her by said Polly, is to defeat it in this action, by showing it to have been gotten up in fraud, and with a view to defeat the rights of his wife.

But it is contended upon the other side that, notwithstanding Chase had an equitable interest in right of his wife, which he might protect in the original action, that inasmuch as judgment has been rendered against Polly Pike, in whose name he defend-ed, and execution has been issued thereon, and Polly Pike's right to the land, the equity of redemption, has been sold on said execution, Chase cannot at this stage of the proceedings review the original action, inasmuch as the court cannot set aside the proceedings under the execution. To sustain the position, the

Pike *v.* Pike.

counsel for Samuel L. Pike relies upon *Little* v. *Bunce,* 7 N. H. Rep. 485.

On examination, it will be found that this case does not sustain the position assumed by the defendant in review. The facts are not analogous, nor does the court sustain the principle contended for by the defendant in review, but the contrary. In this case the parties on the record are the same, both in the original action and in review. In *Little* v. *Bunce,* the parties were not the same as in the original action. Moreover, *Richardson,* C. J., puts writs of review upon the same ground as writs of error, and expressly says, that when a judgment is reversed in a writ of error, he against whom it was rendered is to be restored to all which he has lost by it; and he adds, " And when a judgment is reversed upon a writ of review the law is the same." *Little* v. *Bunce,* 7 N. H. Rep. 491.

And these principles are in conformity with justice and common sense. Suppose the controversy were between Samuel L. Pike and Polly Pike alone, would Polly Pike be estopped from claiming and recovering her right in the land sold under execution if she should recover in this writ of review? If so, men hold their rights to property under a very frail tenure.

We are aware that in Massachusetts a different doctrine is held. In *Little* v. *Bunce, Richardson,* C. J., refers to it, and denies it to be law in this State.

It is also contended that since the decision of the case, *Little* v. *Bunce,* the law regulating actions of review has been altered in this State. It is believed, however, not to be the fact. Rev. Stat., 386, 387; N. H. Laws, (Ed. of 1815,) p. 103; N. H. Laws, (Ed. of 1830,) p. 89.

The rule permitting parties having equitable rights, to protect or defend those rights in the names of the parties holding the legal title, should apply to writs of review. The reason for such a rule is as strong in the latter case as in the original action. It is therefore respectfully submitted, that Ovid Chase has a right to appear and defend the interests of his wife in this as well as in the original action.

EASTMAN, J. The authorities cited by the counsel for Chase fully establish the rule that persons having equitable rights, which can be enforced in courts of law only in the names of parties in whom the legal title is vested, may prosecute and defend those rights in the names of the persons in whom the legal title exists. It is of course to be understood that in such cases a full indemnity for costs must be furnished if required.

And persons in whom the legal title exists cannot control the suits thus necessarily brought in their names; nor will their admissions, subsequent to the time that they ceased to have an interest, be evidence to defeat them. *Webb* v. *Steele*, 13 N. H. Rep. 230. The instances in which questions of the kind arise are usually those of contracts, judgments and choses in action not negotiable, and they ordinarily occur as affecting the action of plaintiffs.

It is also a matter of familiar practice in this State to permit subsequent attaching creditors to defend suits in the name of the defendant upon the record, upon the alleged ground that the claims are without foundation, and with the view to render available the subsequent attachments. *Buckman* v. *Buckman*, 4 N. H. Rep. 319; *Webster* v. *Harper*, 7 N. H. Rep. 594; *Blaisdell & al.* v. *Ladd*, 14 N. H. Rep. 129. In the last case cited, the rule was applied so that a subsequent attaching creditor might appear and show cause why a trustee should not be charged in a prior suit.

But in all such cases, where an appearance is granted, the interests to be affected should be direct and apparent; such as would suffer, if not indeed be sacrificed, were the court to deny the privilege. Unless it is quite apparent that injustice will be done by a refusal, parties should be required to litigate and try their rights in their own names.

In the case before us, Chase's wife held the title to the property attached, subject to the mortgage to Rossiter, by a voluntary conveyance from Polly Pike, her mother. Being a mere voluntary conveyance, it was void as to any valid claim against Polly Pike existing prior to and at the time of the deed. *Carlisle* v.

*Rich,* 8 N. H. Rep. 44; *Smith* v. *Smith,* 11 N. H. Rep. 459; *Kimball* v. *Fenner,* 12 N. H. Rep. 248.

The suit of Samuel L. Pike against Polly was founded upon a claim bearing date prior to the conveyance, and if it was for a good consideration it would avoid the conveyance to the extent of the claim at least. Samuel L. Pike, then, having attached the land, Chase and his wife had an interest to defeat that suit, and thus prevent the application of the property to the satisfaction of any judgment that might be obtained therein.

Had the land been unincumbered, and thus subject to be set off to Samuel L. Pike on the execution that might be recovered by him, there would have been no occasion for the appearance of Chase to defeat the action, since upon a question of title to the property, in a suit between Chase and Samuel L. Pike, the validity of the judgment obtained by Pike would have been open to inquiry by Chase. But if the equity of redemption be regarded as a chattel interest, so that the title of the purchaser could not be affected by the validity of the judgment, as in the case of goods sold upon execution, then there would seem to be no way in which it could be regained by any subsequent suit at law by Chase. Consequently, unless the suit of Samuel L. Pike against Polly could be defeated, the equity would pass beyond recovery by Chase. At all events the interest of Chase and his wife was so direct and apparent in the original action in the common pleas, that whether the equity would pass as a chattel or not, we see no objection to the ruling of the court there, by which Chase was permitted to appear and defend that suit on giving security for costs, as required ; although it is going quite as far, if not farther than the court have ever gone heretofore.

In that suit Polly Pike, the defendant of record, in whose name Chase was permitted to defend, was defeated. Chase paid the costs according to the tenor of his bond, and withdrew it from the files of the court. Execution was taken for the amount of damages recovered, and the equity of redemption sold. The execution was satisfied by the sale of the equity, and thus that action was terminated.

If Chase can maintain this suit upon the writ of review which he has sued out in the name of Polly Pike, it must be as a matter of right growing out of his appearance in the original action; which appearance was obtained by the permission of the court. He was not known in that suit, except as he had leave to appear and defend, and he could not have appeared unless by permission given. There is no provision of law by which he could appear as a matter of right. He was not a party to the record, and no execution could have issued in his name, either for or against him, and he was not liable for costs, except by virtue of the bond which he was required to file. *Holland* v. *Seaver*, 1 Foster's Rep. 386; *Little* v. *Bunce*, 7 N. H. Rep. 485. The record, when reduced to form, was made up between Samuel L. Pike and Polly Pike, and Chase's name appears not in the record, but only upon the docket, as having leave to appear and defend that suit.

Independent, then, of his leave to appear, he could not have defended that suit; and if he could not have defended it except by permission, he cannot bring this writ of review, which is a new proceeding, without some previous leave to do it, unless the permission given in the original action can extend so far as to permit the writ of review to be brought. This question involves an inquiry into the nature of an action pending by writ of review, and how far it is to be regarded as a continuation of the former suit.

The Revised Statutes provide that all civil actions in which judgment has been rendered, and in which an issue of fact has been joined, except those in which by law a different provision is made, may be once reviewed. Rev. Stat., chap. 192, § 1.

By the second section of the same chapter it is enacted that the superior court may grant a review in any other case, when it shall appear that justice has not been done through any accident, mistake or misfortune, and that a further hearing would be just and equitable.

Section nine provides that every case shall be tried upon review in the same manner as if no judgment had been rendered

Pike *v.* Pike.

therein, and any new or further evidence may be produced therein.

And it is also provided by sections ten and eleven, that if the amount of the property, debt or damages recovered by the original plaintiff is increased on review, he shall recover judgment for the excess and costs; and if such amount is reduced, the original defendant shall recover judgment for the amount of such reduction and costs. If the original plaintiff reviews and does not recover a greater amount than in the former suit, the defendant recovers costs; and if the defendant reviews and the amount of the former judgment is not reduced, the original plaintiff recovers costs.

The writ of review does not operate as a stay of execution upon the first judgment, nor does it ever operate, in form, as a reversal of that judgment, but the original judgment stands. Rev. Stat., chap. 192, § 13; *Knox* v. *Knox*, 12 N. H. Rep. 357.

If the original action should be a writ of entry, and the plaintiff should succeed, but upon review the tenant should be successful, the judgment in review would not be a reversal of the former judgment as upon a writ of error, but the judgment would be that the tenant recover the land with costs of the review.

So in case the plaintiff in the first suit recovers judgment for damages and costs, and on review a general verdict is returned for the defendant, restitution is obtained, not by a reversal, strictly speaking, of the first judgment, for that stands, and the execution issued thereon also, but by having the second judgment made up for the defendant to recover the amount of damages for which the first execution issued, and also costs of the review.

The defendant is entitled to a judgment for such damages as will correct the error of the first judgment for damages; and although the review arises out of, and is dependent upon the original suit, and although the matters to be tried in it are the matters in controversy in the original suit, and are to be settled upon the former evidence, or such other and further evidence as the parties may produce, still the review is in effect a new action

to recover back, in the shape of damages, what the defendant alleges has been wrongfully obtained from him by an erroneous decision upon the first trial. *Knox* v. *Knox*, 12 N. H. Rep. 358.

The second judgment, in case the action be for debt or damages, does not restore to the defendant his property and money which have been taken from him by the execution issued on the first judgment, but it simply gives him an execution against the original plaintiff to recover the damages which he has satisfied on the first judgment, or such part thereof as the second judgment shall be for.

If the plaintiff has collected his execution, and is insolvent, the defendant is remediless, unless he has availed himself of the provision of the statute and the rule of court made in accordance therewith, by which the court, on motion, may order a stay of execution where it may appear just and reasonable. Rev. Stat., chap. 192, § 13; Rules of Court 47. Were it not for this statute, reviews would, in many instances, be worse than useless to defendants.

When an action is reviewed, the suit is brought into court again by a new writ, reciting briefly the former proceedings. A new entry is made upon the docket, and the case is tried in the same manner as if no judgment had been rendered therein. We have seen, too, that the second judgment has no effect upon the former one, and no effect upon the execution on the same, unless it has been stayed by order of the court.

Can then the permission which is given to a third person to defend a suit upon the condition that the applicant shall give bond to pay costs, be held to extend so far as to give him the power to bring a writ of review between the parties, against their will, after an adverse termination of the first suit, a payment of costs by the applicant according to his bond, and a withdrawal of his bond from the files of the court? We think that it cannot. Such is not the understanding or expectation of the parties at the time leave is given, and such is not its legal effect. If it were so, then the party appearing should give bond, not only to respond all costs that might be recovered against him in

that action, but all that might also be recovered in an action of review.

When the first action is terminated there is an end of the litigation, unless a new suit shall issue, and the controversy be resuscitated by the operation of the writ of review. The leave given to appear and defend, is to appear and defend the action then pending; not another action brought into court by another writ, and in which, whatever may be the result, a new and different judgment, not disturbing the original judgment, is to be entered. The bond given is to pay the costs in that action, and not those which may arise in a subsequent action, although founded upon the same controversy. The appearance is upon the condition that a bond be filed for the payment of costs. Unless that be done the leave is not granted; and without a compliance with the condition the court would at once strike the appearance, if entered, from the docket. The bond is the foundation upon which the appearance rests, and the leave to appear gives the right to continue in the action to that extent, and no farther, for which provision is made in the bond that costs shall be paid. The condition being to pay the costs that shall accrue in that action, the appearance terminates with the condition upon which it was granted, and, of course, with that action.

In this case the applicant, after paying the costs, withdrew his bond, and thereby removed the foundation upon which the appearance had been granted and upon which it rested. He thus closed his connection with the suit, and independent of the ordinary result upon an appearance in like cases, he has put an end to whatever rights he may have acquired by the filing of the bond, and the writ of review must be regarded as brought without any legal right and without any leave of court.

At the time the verdict was returned, probably Chase might have procured an order for a stay of execution, and such further order as would have given him the right to review. He may now, perhaps, not be without remedy at law, by application to this court for the right to review under § 2, chap. 192, Rev. Stat., although it is a question deserving consideration, whether,

if he should review and recover judgment, he would himself have the right to collect and apply the avails of the execution to his own use. His leave to appear was for the purpose of protecting his land. That has been disposed of, and a judgment on review gives him not back the land, but an execution for the amount of damages, or a part of them, which were recovered in the first suit.

But we do not intend to express any opinion as to these questions, but leave them to be fully examined and decided whenever they shall arise.

· According to the facts stated in this case the motion to dismiss the action must prevail.

*Motion granted.*